JEANNE A. FUGATE (SBN 236341)
 *jfugate@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    (415) 318-1200
Facsimile:    (415) 318-1300

OLIVIA A. RADIN (*pro hac vice submitted herewith*)
 *oradin@kslaw.com*
KIMBERLY WADE (*pro hac vice submitted herewith*)
 *kwade@kslaw.com*
PETER C. Y. KIM (*pro hac vice submitted herewith*)
 *pkim@kslaw.com*
**KING & SPALDING LLP**
1185 Avenue of the Americas, 34th Floor
New York, NY 10036-2601
Telephone:    (212) 556-2100
Facsimile:    (212) 556-2222

Attorneys for Plaintiff
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GOOGLE LLC<br><br>            Plaintiff,<br><br>    v.<br><br>NAO TSARGRAD MEDIA<br><br>            Defendant. | Case No.<br><br>**PLAINTIFF GOOGLE LLC's COMPLAINT AGAINST DEFENDANT NAO TSARGRAD MEDIA**<br><br>**(DEMAND FOR JURY TRIAL)** |

**COMPLAINT**

Plaintiff Google LLC ("Google"), by and through its undersigned counsel, brings this action against Defendant NAO Tsargrad Media ("Tsargrad") as set forth below:

**NATURE OF THE ACTION**

1.     Google brings this action to enjoin Tsargrad, a Russian entity subject to U.S. sanctions, from enforcing a Russian court judgment (the "Russian Judgment") that Tsargrad obtained in breach of its contractual obligations to Google. The Russian Judgment imposes a) an order of specific performance on Google, demanding that Google and its affiliates provide Tsargrad with a Google account, YouTube channel and advertising services in violation of U.S. law and/or Google's policies, and b) a related financial penalty on Google and its affiliates for not complying with the Russian court's unconscionable order.

2.     Tsargrad obtained the Russian Judgment wrongfully—under a Russian law that was passed to counter U.S. and other sanctions against Russia—and is now trying to enforce it in foreign jurisdictions, causing further harm. Google seeks injunctive relief enjoining Tsargrad from enforcing the Russian Judgment and all related appellate and other court decisions, as well as declaratory relief that the Russian Judgment and all related appellate and other court decisions are unenforceable against Google. Google's request for relief has become particularly pressing as it appears to have been served on August 2, 2024 with process in an enforcement action in Turkey (the "Turkish Enforcement Action").

3.     Google is a U.S. technology company that provides products and services to users, including free services such as the search engine Google Search, the email platform Gmail, and the video-sharing platform YouTube. Users with Google accounts can create YouTube channels to upload content on YouTube, including videos, comments, and playlists. They can enter into separate agreements to earn revenues, including from ad placements, on their YouTube channels ("monetization").

4.     Tsargrad is a Russian nationalist propaganda outlet indirectly majority-owned by Konstantin Malofeyev, a Russian oligarch who has been sanctioned by the U.S. and other

governments[1] for his role in funding Russia's war in Ukraine, among other conduct. According to the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"), Malofeyev funded separatist activities in Eastern Ukraine, was a key source of financing for Russians promoting the annexation of Crimea, and supported pro-Russian activities that harm democracy, elections, and the security and stability of numerous countries. Tsargrad's parent company, OOO Tsargrad, is owned by Malofeyev and has itself been sanctioned.[2] OFAC identified OOO Tsargrad as a "cornerstone" of Malofeyev's "broad malign influence network" that "spreads pro-Kremlin propaganda and disinformation." OOO Tsargrad spreads such propaganda and disinformation through Defendant.

5.      Tsargrad created a Google account, which was associated with the Gmail address tsargradtv@gmail.com (the "Google Account"). In creating the Google Account, Tsargrad agreed to Google's Terms of Service (the "Google Terms of Service"). (Ex. A.) The Google Terms of Service require all disputes arising out of or relating to the Google Terms of Service to be resolved under California law in the courts of Santa Clara County, California. (*Id.* at 17.) Tsargrad also created a YouTube channel under the YouTube Terms of Service (the "YouTube Terms of Service") and entered into a separate agreement with Google's Irish affiliate, Google Ireland Limited ("Google Ireland"), for advertising services (the "Monetization Contract"). The YouTube Terms of Service and the Monetization Contract require all disputes arising out of or relating to those contracts to be resolved under English law in the courts of England and Wales.[3]

6.      In July 2020, Google ceased providing services to Tsargrad in compliance with U.S. sanctions laws and/or Google's relevant policies after identifying it as an entity that was indirectly majority-owned by Malofeyev. Google terminated the Google Account and its associated YouTube channel (the "YouTube Channel"). Google Ireland also ceased providing

---

[1] Malofeyev was also sanctioned by Australia, Canada, the European Union, Japan, New Zealand, Switzerland, Ukraine, and the United Kingdom.
[2] In addition, OFAC sanctioned OOO Tsargrad-Media "for being owned or controlled by, or for having acted or purported to act for or on behalf of, directly or indirectly, [OOO] Tsargrad." OOO Tsargrad-Media is an affiliate of Tsargrad. (*See* Ex. G.)
[3] Because the YouTube Terms of Service and the Monetization Contract selected England as the exclusive forum for disputes, they are not the subject of this lawsuit.

1 advertising services to Tsargrad.

2      7.    The Google Terms of Service required Tsargrad—which was subject to U.S.

3 sanctions by virtue of Malofeyev's majority ownership—to comply with sanctions laws. The

4 Google Terms of Service also gave Google the right to terminate the Google Account, and

5 thereby terminate the YouTube Channel, to comply with applicable law and Google's policies.

6 (*Id.* at 18.)

7      8.    Notwithstanding the express language of the Google Terms of Service, Tsargrad

8 sued Google in Russia, using a law that was specifically designed to counter U.S. and other

9 foreign sanctions. (Ex. B.) Tsargrad alleged that the termination of the Google Account and the

10 YouTube Channel was improper. Tsargrad also sued Google Ireland under the Monetization

11 Contract and a Russian affiliate of Google, OOO Google ("Google Russia"), even though

12 Google Russia had no role in providing any services to Tsargrad and was not a counterparty to

13 the agreements with Tsargrad. Tsargrad thereby raised disputes relating to both the Google

14 Terms of Service and the YouTube Terms of Service in Russia, even though those Terms of

15 Service called for resolution of all disputes in, respectively, California and England.

16      9.    Tsargrad asked the Arbitrazh Court of the City of Moscow (the "Russian

17 Arbitrazh Court"), a civil trial court for business disputes, to order Google and its affiliates to

18 reinstate the Google Account and continue providing services to Tsargrad, in violation of U.S.

19 law and/or Google's policies. Tsargrad further asked the Russian Arbitrazh Court to impose a

20 compounding penalty (called an "*astreinte*" under Russian law) on Google and its affiliates if the

21 account was not reinstated. Tsargrad asked that this penalty start at 100,000 rubles

22 (approximately $1,050) per day and double each week until Google complied with the Russian

23 Arbitrazh Court's order.

24      10.    Even though the parties had expressly selected a forum outside Russia to resolve

25 disputes, the Russian Arbitrazh Court asserted jurisdiction—over Google's objections—on the

26 grounds that Tsargrad was subject to sanctions that are "prescriptions of foreign authorities" that

27 are contrary to Russian public policy and should not apply to Russian entities. (Ex. C.)

28      11.    Google objected to jurisdiction and contested Tsargrad's claims before the

1  Russian Arbitrazh Court, to vindicate its agreed-upon rights to terminate contracts to comply

2  with U.S. law and/or Google's policies. These efforts were brushed aside by the Russian

3  Arbitrazh Court, which issued a judgment on April 20, 2021 ordering Google and its affiliates to

4  reinstate the Google Account and related services in violation of U.S. and other laws. (Ex. D.)

5       12.    The Russian Judgment imposed Tsargrad's requested penalty verbatim, holding

6  that Google, Google Ireland and Google Russia were jointly and severally liable. In order to

7  comply with U.S. law and/or Google's policies, Google did not carry out the specific

8  performance required by the Russian Judgment. As a result, this penalty continues to accrue

9  unless and until the Google entities resume providing services to Tsargrad in violation of U.S.

10  law and/or Google's policies. By issuing the Russian Judgment, the Russian courts demonstrated

11  that they are subject to political influence and have been weaponized to support Russia's efforts

12  to undermine U.S. sanctions. As a result, the Russian Judgment is contrary to the international

13  legal order and subverts enforcement rules applicable in foreign jurisdictions, thereby

14  circumventing the policies and laws of local governments as enforced through their judicial

15  systems.

16       13.    In early March 2022, shortly after Russia's invasion of Ukraine, Google

17  announced that it would pause the vast majority of its commercial activities in Russia, while also

18  confirming that its free services such as Search, Gmail, and YouTube were still operating there,

19  in an effort to provide users in Russia with access to information and an outlet for free

20  expression. Shortly thereafter, the Russian Federal Bailiff Service (the "Bailiffs"), an

21  instrumentality of the Russian government, seized Google Russia's liquid assets to enforce the

22  Russian Judgment (the "Seizure"). The Bailiffs ordered Google Russia's bank to freeze and

23  subsequently transfer all the money in Google Russia's bank accounts to the Bailiffs on an

24  ongoing basis. The Bailiffs seized more than $100 million of Google Russia's assets, even

25  though the amount purportedly due under the Judgment at the time was less than $12.5 million

26  (one billion rubles). Tsargrad received one billion rubles from the Seizure, which it said it would

27  use to support Russia's war in Ukraine. As a result of the Seizure, Google Russia became

28  insolvent and is now undergoing liquidation. In addition to and separate from the Seizure, the

compounding penalty under the Russian Judgment continues to accrue for Google.

14.     Tsargrad recently initiated the Turkish Enforcement Action, seeking to enforce the Russian Judgment and related appellate and other court decisions, including a decision by the Ninth Arbitrazh Court of Appeal (the "Russian Appellate Court"), a civil appellate court, affirming the Russian Judgment and an additional decision by the Russian Arbitrazh Court in Google Russia's bankruptcy proceedings issued on the basis of the Russian Judgment, against Google, Google Ireland, and Google Russia. (Ex. E.) Tsargrad appears to have served Google with process under the Hague Service Convention on August 2, 2024. The Turkish Enforcement Action is an attempt to seize funds from Google for complying with sanctions against Russian entities.

15.     On information and belief, Tsargrad plans to bring more enforcement actions in additional countries around the world. According to public reporting, Tsargrad and two other Russian *astreinte* holders[4] plan to enforce the Russian Judgment in fifteen foreign jurisdictions, which will cause Google further harm in contravention of the binding provisions of the Google Terms of Service and the YouTube Terms of Service.[5] In addition, Tsargrad may file a lawsuit in Russia under a Russian law that was passed to counter the impact of sanctions, seeking an injunction to prevent Google from proceeding with this action (an "anti-suit injunction").

16.     Google, an American company headquartered in this district, seeks expedited, equitable relief from this Court including, *inter alia*:

- injunctive relief enjoining enforcement of the Russian Judgment and all related appellate and other court decisions outside Russia;

- injunctive relief enjoining Tsargrad's efforts to obtain an anti-suit injunction in Russia

---

[4] Google is filing complaints against these two other companies, ANO TV-Novosti and NO Fond Pravoslavnogo Televideniya, also seeking temporary restraining orders and preliminary injunctive relief. Google intends to file an Administrative Motion to Relate the three cases because "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges." Civil Local Rule 3-12(a)(2).

[5] "A court in South Africa seized Google assets based on the decision of the ASGM," Pravo RU (June 11, 2024), https://pravo.ru/news/253511/?_x_tr_hist=true.

relating to this lawsuit;

- declaratory relief that the forum-selection clause and choice-of-law provisions of the Google Terms of Service are valid and binding upon the parties; and

- declaratory relief that Tsargrad breached the Google Terms of Service when it filed its lawsuit in Russia in an attempt to force Google to violate U.S. sanctions laws and/or its own policies.

17.     California strongly favors enforcing presumptively valid forum-selection clauses and Google—which was wrongfully sued by Tsargrad in Russia because Google complied with U.S. sanctions—seeks protection under the laws of California, which the parties agreed would govern any dispute arising under the Google Terms of Service.

## PARTIES

18.     Plaintiff Google is a Delaware limited liability company with its principal place of business in Mountain View, California.

19.     Defendant Tsargrad is a Russian media company organized under Russian law with its principal place of business in Russia. Tsargrad is indirectly majority-owned by the Russian oligarch Konstantin Malofeyev. Both Malofeyev and Tsargrad's parent company, OOO Tsargrad, have been designated by OFAC as Specially Designated Nationals ("SDNs") subject to U.S. sanctions. According to OFAC, "Malofeyev, covertly or through intermediaries, supported pro-Russian activities that undermine democracy, interfere in elections, and degrade security and stability in a host of countries."

## JURISDICTION & VENUE

20.     This Court has personal jurisdiction over Tsargrad because Tsargrad agreed to be subject to suit in this Court. Tsargrad agreed to the Google Terms of Service, which state (in relevant part) that, "All disputes in any way relating to these terms, the additional terms of use of individual services, or the services, regardless of conflict of laws rules, shall be resolved in accordance with the laws of the State of California, USA. **Such disputes are subject to the exclusive jurisdiction of the federal and state courts located in Santa Clara County, California, USA.**" (Ex. A at 17 (emphasis added).)

21. To the extent necessary, Tsargrad also has sufficient minimum contacts with California because Tsargrad—through its litigation in Russia and in Turkey—seeks to cause Google, a citizen of California, to take action within California to comply with the Russian Judgment.

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, exclusive of interest and costs. Google is a citizen of California and Delaware, while Tsargrad is a citizen of a foreign state, Russia.

23. Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. 1391(b) because the Google Terms of Service provide that "All disputes in any way relating to these terms . . . are subject to the exclusive jurisdiction of the federal and state courts located in Santa Clara County, California, USA" (*Id.* at 17), and the parties expressly consented to personal jurisdiction in these courts.

## **FACTUAL BACKGROUND**

### A. **Tsargrad Creates the Google Account and Agrees to the Google Terms of Service**

24. In August 2014, Tsargrad created the Google Account, which was associated with the Gmail address tsargradtv@gmail.com, and the YouTube Channel, which was associated with the Google Account.

25. In creating the Google Account, Tsargrad agreed to the Google Terms of Service. Under the Google Terms of Service, Tsargrad agreed to updates to the Google Terms of Service as a condition of maintaining the Google Account. (*Id.* at 19.)

26. At all relevant times, the Google Terms of Service gave Google the right to terminate the Google Account if (among other things) Tsargrad's use of the Google Account violated applicable laws or the Google Terms of Service. (*Id.* at 17.) The Google Terms of Service as modified provided that "Google reserves the right to temporarily or permanently block your access to services or delete your Google account" if "you materially or repeatedly breach these terms, additional terms, or the rules applicable to individual services" or if "this is

1     required to comply with a legal requirement or a court order." (*Id.*)

2     27.     In addition, at all relevant times, the Google Terms of Service contained a binding

3     choice-of-law and forum-selection clause, which stated:

4         All disputes in any way relating to these terms, the additional terms

5         of use of individual services or the services, regardless of conflict

6         of laws rules, shall be resolved in accordance with the laws of the

7         State of California, USA. **Such disputes are subject to the**

8         **exclusive jurisdiction of the federal and state courts located in**

9         **Santa Clara County, California, USA.**

10     (*Id.* at 17 (emphasis added).)

11     **B.     Google Exercises its Contractual Right to Cease Providing Services to**

12         **Tsargrad due to OFAC Sanctions**

13     28.     OFAC and the U.S. Department of State have the authority to designate entities

14     and individuals that engage in activities contrary to U.S. foreign policy or national security as

15     SDNs. Under U.S. law, U.S. persons may not engage in dealings, directly or indirectly, with any

16     party either (i) expressly designated an SDN by OFAC or the State Department, or (ii) owned

17     50% or more by an SDN.

18     29.     In July 2020, Google and Google Ireland ceased providing services to Tsargrad in

19     compliance with U.S. sanctions laws and/or Google's relevant policies, after determining that

20     Tsargrad had created the Google Account and YouTube Channel and that it was indirectly

21     majority-owned by Malofeyev, who had been designated by OFAC as an SDN. Google

22     terminated the Google Account and YouTube Channel, which had the effect of terminating

23     services provided in connection with that account. Google Ireland similarly stopped providing

24     advertising services to Tsargrad.

25     **C.     Tsargrad Files Suit in Russia, Breaching the Google Terms of Service**

26     30.     Even though Google terminated the Google Account to comply with U.S. law and

27     Google's policies, and Google was entitled to do so under the Google Terms of Service,

28     Tsargrad still demanded that the Google Account and related services be reinstated. Instead of

raising this dispute in California, as required by the explicit terms of the Google Terms of Service, on August 27, 2020, Tsargrad sued Google in the Russian Arbitrazh Court. (Ex. B.) By bringing its litigation in Russia, Tsargrad breached the Google Terms of Service.

31.    Tsargrad asked the Russian Arbitrazh Court for an order requiring Google to reinstate the Google Account and related services. (*Id.* at 9.) Tsargrad also improperly named Google Russia as a defendant, even though Google Russia had no contractual relationship with Tsargrad, did not provide the Google Account or any related services, and did not have the legal or technical ability to restore the Google Account. (*See id.* at 1.)

32.    Tsargrad claimed its suit was permissible under Article 248.1 of the Arbitrazh Procedural Code of the Russian Federation (the "APC"), introduced by Russian Law No. 171-FZ (hereinafter, "Article 248.1"). (Ex. F.) Article 248.1 was enacted by Russia in June 2020 to counter the impact of sanctions from "unfriendly foreign states," including the U.S., and purports to grant Russian courts "exclusive jurisdiction" over disputes involving Russian individuals subject to sanctions by foreign states, "*unless otherwise provided by . . . agreement of the parties*." (*Id.* at 1.) The Google Terms of Service constitute such an agreement, as they provide that disputes between Tsargrad and Google will be heard in the courts of Santa Clara County, California. And while the Google Terms of Service permit account holders to petition foreign courts only "*if* applicable local law *prevents* certain disputes from being resolved in a California court" or "*if* applicable local law *prevents* [a user's] local court from applying California law to resolve these disputes," (Ex. A at 18 (emphases added)), Article 248.1 does not "prevent" Tsargrad from complying with the Google Terms of Service's forum-selection clause. Instead, Article 248.1 is permissive, rather than mandatory. It gives sanctioned Russian parties the option of proceeding in Russia, but does not require them to do so. Indeed, other sanctioned Russian parties have appeared in U.S. courts since.[6]

---

[6] *See, e.g.*, *Schansman et al v. Sberbank of Russia PJSC et al.*, No. 1:19-cv-02985-ALC-GWG, S.D.N.Y., ECF Nos. 396–400 (notices of appearance dated July 13, 2022 on behalf of Sberbank of Russia, a sanctioned Russian entity which was designated by OFAC on February 24, 2022); *id.*, ECF Nos. 426–28 (notices of appearance dated August 30, 2022 and August 31, 2022 on behalf of VTB Bank, a sanctioned Russian entity which was also designated on February 24, 2022).

33.     Nonetheless, the Russian Arbitrazh Court ignored the forum-selection and choice-of-law provisions in the Google Terms of Service, accepted Tsargrad's arguments, and asserted jurisdiction to hear the case under Article 248.1. (Ex. C at 3.) Google objected to the jurisdiction of the Russian courts. The Russian Arbitrazh Court wholly disregarded the parties' agreement to resolve all disputes in the courts of Santa Clara County, California, misapplied the law, and did not afford Google due process. The Russian Arbitrazh Court, among other things, ignored the corporate distinction between Google and Google Russia—a distinct entity and one that had assets in the jurisdiction—without any factual or legitimate legal basis, thereby allowing Tsargrad to seize Google Russia's assets. The Russian Arbitrazh Court determined that the Russian stance against U.S. sanctions overrode the terms of the parties' explicit agreement and the domestic law applicable to the parties and ignored valid legal and factual defenses Google raised. Without waiving its jurisdictional objection, Google was forced to litigate the case to judgment before the Russian Arbitrazh Court in an effort to mitigate damages.

34.     In April 2021, the Russian Arbitrazh Court found in favor of Tsargrad on the merits of its claims and ordered Google to reinstate the Google Account and related services, including the YouTube Channel. (Ex. D.) The court adopted Tsargrad's request verbatim and imposed a compounding penalty in the amount of 100,000 rubles for each day of non-performance, starting from the sixth day from the effective date of the judgment, subject to a weekly twofold increase of the amount of the daily penalty. (*Id.* at 6, 8.) The court identified the penalty as an "*astreinte*" and stated that it would run until the defendants complied with its order for specific performance, which would require Google to violate applicable U.S. law. (*Id.* at 7.) The Russian Appellate Court affirmed the Russian Judgment, subject to imposing a cap on the *astreinte* for a nine-month period of one billion rubles, after which it would start to accrue again. The Supreme Court of Russia summarily upheld the Russian Judgment as modified by the Russian Appellate Court.

35.     In January 2022, Google temporarily restored the Google Account, after obtaining a license from OFAC that allowed Google to do so. By taking these actions, Google made a concerted effort to comply with the Russian Judgment. The Google Account's restoration

permitted access to the YouTube Channel so it could be used within Russia while being geographically blocked from viewers outside the country. The OFAC license did not authorize provision of monetization services, and Google Ireland did not reinstate services under the Monetization Contract. Google also did not pay the *astreinte*. Therefore, Google did the best it could to respond to the Russian court's impossible judgment while complying with U.S. law and Google's policies. Nonetheless, the Russian Arbitrazh Court held that Google had not complied with its judgment. This belied the idea that the Russian Judgment's objective was to ensure Tsargrad regained the use of the Google Account and the YouTube Channel, rather than to punish Google for complying with U.S. sanctions.

36.     After its OFAC license expired, Google again terminated the Google Account and associated services to comply with U.S. law and/or Google's policies.

**D.     Enforcement of the Russian Judgment Leads to Liquidation of Google Russia**

37.     Tsargrad first enforced the Russian Judgment against Google Russia.

38.     In early March 2022, after Russia's invasion of Ukraine, Google announced that it would pause the vast majority of its commercial activities in Russia, while maintaining the operation of free services such as Search, Gmail, and YouTube, to provide Russian users with access to information and an outlet for free expression.

39.     Shortly thereafter, the Bailiffs enforced the Russian Judgment by seizing all of Google Russia's liquid assets. The Bailiffs ordered Google Russia's bank to freeze and subsequently transfer all the money in Google Russia's accounts to the Bailiffs on an ongoing basis.

40.     Under an interim appeal of the Russian Judgment, the maximum amount purportedly due at the time of the Seizure was one billion rubles (which was less than $12.5 million). Even so, the Russian government—through the Bailiffs—seized more than $100 million of Google Russia's assets. Google has limited visibility into what the Bailiffs did with the money seized from Google Russia. After the Seizure, however, Malofeyev announced he would donate approximately one billion rubles he received to help fund the Russian

government's invasion of Ukraine. In April 2022, OFAC appeared to cite this as evidence that OOO Tsargrad functions as the "cornerstone of Malofeyev's broad malign influence network," pointing to OOO Tsargrad's "recent[] pledge[] to donate more than $10 million to support Russia's unprovoked war against Ukraine." (Ex. G.)

41.     As a result of the Seizure, Google Russia became insolvent and is now undergoing liquidation. The Russian bankruptcy court appointed a manager of Google Russia's bankruptcy, who is meant to act as a neutral representative of creditors and the bankruptcy estate. This court-appointed bankruptcy manager is represented in the bankruptcy by the same law firm, Art de Lex, that represented Tsargrad and other parties that sued Google in Russia to obtain *astreinte* penalties. As with Tsargrad, each of those litigations related to the termination of one or more Google accounts and/or YouTube channels and was filed in Russia in breach of the applicable terms of service. Those litigations also resulted in *astreinte* penalties against Google. Art de Lex continues to represent Tsargrad in attempts to enforce the Russian Judgment against Google. Google Russia and its shareholder, Google International LLC, have objected to this conflict of interest, but their objections have so far gone unheeded. This is yet another example of how the Russian courts have mistreated Google and its affiliates.

42.     In December 2022, Tsargrad (represented by Art de Lex) filed a creditor's claim in Google Russia's bankruptcy proceedings to register the amount of the penalty in the Russian Judgment. The Russian Arbitrazh Court issued a judgment on Tsargrad's creditor claim, which Tsargrad seeks to enforce in Turkey alongside the Russian Judgment.

**E.     Tsargrad Seeks to Enforce the Russian Judgment Outside of Russia Against Google and its Affiliates**

43.     In November 2023, Tsargrad initiated the Turkish Enforcement Action to enforce the Russian Judgment and related appellate and other court decisions, including a decision by the Russian Appellate Court affirming the Russian Judgment and an additional decision by the Russian Arbitrazh Court in Google Russia's bankruptcy proceedings issued on the basis of the Russian Judgment. (Ex. E.) Tsargrad named Google, Google Ireland, and Google Russia as defendants, and named a Turkish affiliate of Google, Google Reklamcilik ve Pazarlama Ltd Sti

("Google Turkey"), as a purported "representative" for defendants even though Google Turkey is not a party to the Russian Judgment. (*Id.* at 1.) The Turkish Enforcement Action is an attempt to seize funds from Google for complying with sanctions against Russian entities, in a continued effort to force Google to violate U.S. law and/or Google's own policies or bear the brunt of unjustified penalties.

44.     In March 2024, the Turkish court ordered Tsargrad to serve Google with the action. That service appears to have been effectuated on August 2, 2024. The next hearing before the Turkish court is set for October 2024.

45.     Further, according to public reporting, Tsargrad, along with two other *astreinte* holders,[7] is now seeking through its attorneys (who are, upon information and belief, Art de Lex) the recognition and enforcement of the Russian Judgment against Google in fifteen jurisdictions around the world.[8] Google is informed and believes, and on that basis alleges, that Tsargrad will continue this campaign against Google in other countries and may seek an anti-suit injunction against Google from the Russian Arbitrazh Court to enjoin Google from proceeding with this lawsuit. Malofeyev has stated publicly that he plans to enforce the Russian Judgment against Google in Asia, Africa, and Latin America, including in particular Brazil, China, India, Israel, Singapore, Taiwan, and Turkey, among other countries. (*See* Ex. H at 2.) This continued effort by Tsargrad to pursue claims that purportedly arise under the Google Terms of Service in foreign jurisdictions will continue to harm Google by exposing it to unjustified costs and risk.

**F.     Google Will Be Irreparably Harmed by Tsargrad's Enforcement Efforts**

46.     Google will face irreparable harm from Tsargrad's breach of the Google Terms of Service and its efforts to enforce the Russian Judgment and related appellate and other court decisions.

---

[7] *See supra*, n.4. Google is filing complaints against these two other companies, also seeking temporary restraining orders and preliminary injunctive relief.
[8] "A Court in South Africa Seized Google Assets Based on the Decision of the ASGM," Pravo RU (June 11, 2024), https://pravo.ru/news/253511/?_x_tr_hist=true; "High court grants Russian Orthodox Church permission to seize Google South Africa's assets," Daily Maverick (June 12, 2024), https://www.dailymaverick.co.za/article/2024-06-12-high-court-grants-russian-orthodox-church-permission-to-seize-google-south-africas-assets/.

47.     Google will continue to be denied the benefit of its contractual rights to have disputes arising under the Google Terms of Service be decided by courts of Santa Clara County, California under California law. The purpose of the forum-selection and choice-of-law provisions in the Google Terms of Service is to ensure legal certainty and avoid politically-motivated foreign tribunals from unfairly penalizing Google and its affiliates like the Russian Arbitrazh Court did in Tsargrad's case.

48.     Tsargrad seeks to enforce the Russian Judgment and related appellate and other court decisions in its favor against Google in Turkey and, on information and belief, in other jurisdictions in an effort to cause Google to violate U.S. law and suffer financial harm. These enforcement efforts are a direct attempt to undermine U.S. law because they are trying to force Google to transact with a party that is owned and controlled by an SDN, and to punish Google and its affiliates through the enforcement of monetary fines against Google solely because Google complied with U.S. law. Moreover, Tsargrad's enforcement efforts are a direct attempt to undermine the parties' contractual promises and wrongfully benefit from the Russian Judgment that was only possible because of Russian laws specifically designed to counter U.S. sanctions and Google's policies. Tsargrad has publicly stated that it would use the funds seized, wrongfully, from Google Russia to help fund Russia's invasion of Ukraine. Successful enforcement efforts outside of Russia may go to the same end.

49.     Absent an order from this Court enjoining Tsargrad's enforcement efforts and declaring that Tsargrad must pursue any disputes arising under the Google Terms of Service in California (as it agreed to do), Google will be forced, in order to maintain its compliance with U.S. law, to continue litigating Tsargrad's claims all around the world.

50.     Google consequently brings this action for breach of contract and declaratory and injunctive relief to stop Tsargrad's improper conduct that runs counter to U.S. law and Tsargrad's contractual obligations.

## **FIRST CAUSE OF ACTION**

### **(Injunctive Relief – Breach of Forum-Selection Clause)**

51.     Google incorporates by reference all foregoing and subsequent paragraphs as

though fully set forth herein.

52.   Tsargrad agreed to be bound by the Google Terms of Service which constitute a valid and binding contract between Google and Tsargrad under California law.

53.   Google timely performed, or was excused from performing, its obligations under the Google Terms of Service.

54.   Tsargrad and Google agreed to litigate all disputes arising under the Google Terms of Service in the courts of Santa Clara County, California unless prevented from doing so under local law. The exception did not apply to Tsargrad, because no applicable local law, including Article 248.1, prevented Tsargrad from suing in this Court or applying California law to resolve this dispute.

55.   Tsargrad breached the Google Terms of Service by, among other things, choosing to assert claims arising under the Google Terms of Service before the Russian Arbitrazh Court and not a court in Santa Clara County, California, as required by the Google Terms of Service.

56.   As a direct and proximate consequence of Tsargrad's breach, the Russian Arbitrazh Court issued the Russian Judgment, causing damage to Google in the form of unnecessary costs and fees, as well as exposing Google and its employees to liability under U.S. law.

57.   Google continues to face further irreparable harm as a result of Tsargrad's breach, including the threat of enforcement which would cause Google to violate U.S. law, face a compounding penalty under the Russian Judgment, and to bear other costs to enforce its rights, including attorneys' fees and other costs of litigation, including but not limited to harm resulting from Tsargrad's attempt to enforce the Russian Judgment and related appellate and other court decisions in Turkey.

58.   Accordingly, Tsargrad and all of its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, should be enjoined from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings in any jurisdiction other than the federal and state courts of Santa Clara County, California or the courts of England and Wales, as called for by any applicable forum-selection

clauses in applicable contracts, that seek to enforce or take advantage of the Russian Judgment and related appellate and other court decisions against Google. Tsargrad's lawsuits in Russia are vexatious and oppressive to Google and run counter to applicable law and Tsargrad's contractual obligations.

59.     On information and belief, Tsargrad may seek an anti-suit injunction against Google from the Russian Arbitrazh Court in connection with this lawsuit, as permitted by Article 248.2 of the APC, to counter the impact of sanctions from "unfriendly" countries. This Court should enjoin any attempt by Tsargrad to obtain from the Russian Arbitrazh Court an anti-suit injunction against this or any related action brought by Google. The courts of Santa Clara County, California have exclusive jurisdiction under the Google Terms of Service to adjudicate the rights and responsibilities of Google and Tsargrad under that agreement. Any request for an anti-suit injunction by Tsargrad against Google before the Russian Arbitrazh Court would be a clear outgrowth of Tsargrad's punitive and extra-contractual efforts that led to the Russian Judgment at issue in this case. Such forum shopping was designed to frustrate U.S. policy and to be vexatious and oppressive to Google.

60.     Finally, international comity will not tolerate a judgment that requires violations of U.S. law or that imposes a compounding, unconscionable penalty based on the termination of a single Google account or YouTube channel, let alone one controlled by an SDN.

**SECOND CAUSE OF ACTION**

**(Declaration Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201)**

61.     Google incorporates by reference all foregoing and subsequent paragraphs as though fully set forth herein.

62.     Tsargrad agreed to be bound by the Google Terms of Service which constitute a valid and binding contract between Google and Tsargrad under California law.

63.     Google timely performed, or was excused from performing, its obligations under the Google Terms of Service.

64.     Tsargrad and Google agreed to litigate all disputes arising under the Google Terms of Service in the courts of Santa Clara County, California unless prevented from doing so

under local law. The exception did not apply to Tsargrad, because no applicable local law, including Article 248.1, prevented Tsargrad from suing in this Court or applying California law to resolve this dispute.

65.     Tsargrad breached the Google Terms of Service by, among other things, choosing to assert claims arising under the Google Terms of Service before the Russian Arbitrazh Court and not a court in Santa Clara County, California, as required by the Google Terms of Service.

66.     Even though the Russian Judgment was obtained in violation of the Google Terms of Service and its enforcement against Google would require Google to violate U.S. law and/or Google's policies by dealing with Tsargrad, an SDN, Tsargrad seeks to enforce the Russian Judgment and related appellate and other court decisions against Google (and its affiliates) in Turkey and, upon information and belief, around the world.

67.     There is an actual, justiciable, and substantial controversy between Google and Tsargrad concerning their legal rights and obligations under the Google Terms of Service. A judicial determination is necessary and required at this stage to adjudicate the legal interests of the parties.

68.     A declaratory judgment would serve the necessary purpose of clarifying and settling the legal relations between the parties, finalizing the controversy, and offering relief from the significant uncertainty and harm that currently exist as a result of Tsargrad's actions in connection with obtaining and enforcing the Russian Judgment. The substantial controversy between the parties regarding these issues is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

69.     Accordingly, Google respectfully requests declarations to the effect that:

    a.  Pursuant to the Google Terms of Service, Google had the right to terminate or indefinitely suspend Tsargrad's Google Account and related services, including the YouTube Channel, in light of U.S. sanctions against Malofeyev;

    b.  The forum-selection and choice-of-law clauses in the Google Terms of

Service are valid and binding upon Tsargrad;

    c. Tsargrad breached the Google Terms of Service by bringing suit in Russia to demand the reinstatement of the Google Account and related services, including the YouTube Channel;

    d. Tsargrad was required to resolve, and must resolve, any disputes arising out of or related to the Google Terms of Service, including regarding the termination of the Google Account and related services, including the YouTube Channel, under California law in the courts of Santa Clara County, California;

    e. Tsargrad's pursuit of enforcement efforts, including the filing of the Turkish Enforcement Action, causes further harm to Google arising from Tsargrad's breach of the Google Terms of Service;

    f. Tsargrad's efforts to litigate the Turkish Enforcement Action violates U.S. law because the enforcement of such an order threatens to cause Google to violate U.S. sanctions law; and

    g. The Russian Judgment's *astreinte* is an unconscionable penalty and a punitive judgment, the enforcement of which would violate principles of comity and due process, and is unenforceable against Google.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in favor of Google and against Defendant, as follows:

1. Declarations that:

    a. Pursuant to the Google Terms of Service, Google had the right to terminate or indefinitely suspend Tsargrad's Google Account and related services, including the YouTube Channel, in light of U.S. sanctions against Malofeyev;

    b. The forum-selection and choice-of-law clauses in the Google Terms of Service are valid and binding upon Tsargrad;

c. Tsargrad breached the Google Terms of Service by bringing suit in Russia to demand the reinstatement of the Google Account and related services, including the YouTube Channel;

d. Tsargrad was and remains required to resolve any disputes arising out of or related to the Google Terms of Service, including regarding the termination of the Google Account and related services, including the YouTube Channel, in the courts of Santa Clara County, California;

e. Tsargrad's pursuit of enforcement efforts, including the filing of the Turkish Enforcement Action, causes further harm arising from Tsargrad's breach of the Google Terms of Service;

f. Tsargrad's efforts to litigate the Turkish Enforcement Action violates U.S. law because the enforcement of such an order threatens to cause Google to violate U.S. sanctions law; and

g. The Russian Judgment's *astreinte* is an unconscionable penalty and a punitive judgment, the enforcement of which would violate principles of comity and due process, and is unenforceable against Google.

2. Preliminary and permanent injunctions enjoining Tsargrad from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings in any jurisdiction other than the federal and state courts of Santa Clara County, California or the courts of England and Wales, as called for by any applicable forum-selection clauses in applicable contracts, that seek to enforce or take advantage of the Russian Judgment and all related appellate and other court decisions against Google and its affiliates;

3. Preliminary and permanent injunctions enjoining Tsargrad from commencing, prosecuting, continuing, or taking any steps in or otherwise participating in any proceedings in the Russian Federation intended to restrain or impede Google's pursuit of this action;

4. Damages caused by Tsargrad's breach of the Google Terms of Service's forum-selection clause;

5. Attorneys' fees and costs; and

6.      Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Google respectfully requests a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure for all issues so triable in this action.

Dated: August 19, 2024                    KING & SPALDING LLP

                                          By:  */s/ Jeanne A. Fugate*
                                               OLIVIA A. RADIN
                                               JEANNE A. FUGATE
                                               KIMBERLY WADE
                                               PETER C. Y. KIM

                                               Attorneys for Plaintiff GOOGLE LLC