1

2

3                          UNITED STATES DISTRICT COURT

4                        NORTHERN DISTRICT OF CALIFORNIA

5                                SAN JOSE DIVISION

6

7     GOOGLE LLC,                            Case No.    5:24-cv-05423-EJD

8                      Plaintiff,            **ORDER GRANTING IN PART**
                                            **MOTION FOR PRELIMINARY**
9              v.                            **INJUNCTION**

10    NAO TSARGRAD MEDIA, et al.,            Re: ECF No. 4[1]

11                     Defendants.

12          In 2020, Plaintiff Google LLC terminated the Google Account associated with Defendant

13   NAO Tsargrad Media, a Russian media company.  According to Google, it terminated Tsargrad's

14   account to comply with U.S. sanctions law and to enforce its own internal policies.  Tsargrad

15   responded by filing suit against Google in Russian court, alleging that the account termination

16   violated Google's Terms of Service (the Google Terms).  Tsargrad won a judgment against

17   Google in that lawsuit, but in the process, Tsargrad allegedly violated the Google Terms' forum

18   selection clause.  Based on that alleged violation, Google now moves to enjoin Tsargrad from

19   enforcing its Russian judgment anywhere in the world.  The Court finds that Tsargrad likely

20   procured its Russian judgment in violation of the Google Terms' forum selection clause.

21   Therefore, the Court GRANTS Google's motion for a preliminary injunction, except to the extent

22   that Google seeks to enjoin Tsargrad from enforcing its judgment in Russia.

23   **I.      BACKGROUND**

24          Tsargrad is a Russian media company whose indirect owner and parent company are

25   subject to U.S. sanctions.  Compl. ¶ 19, ECF No. 1; Andreatta Decl. ¶ 11, ECF No. 4-20.  Because

26

_____

27   [1] There are also pending preliminary injunction motions against Defendants ANO TV-Novosti
     (Case No. 5:24-cv-05426, ECF No. 4), and NO Fond Pravoslavnogo Televideniya (Case No. 5:24-
28   cv-05428, ECF No. 4).  As stated in a concurrent order, the Court does not resolve those motions.

Case No.: 5:24-cv-05423-EJD
ORDER GRANTING IN PART PI             1

United States District Court
Northern District of California

1    of this, Google terminated Tsargrad's Google account on or about July 27, 2020. Andreatta Decl.

2    ¶ 11. A month later, Tsargrad filed suit in Russian court alleging in part that Google had violated

3    its own Terms when terminating Tsargrad's account. Radin Decl. I,[2] Ex. 1, ECF No. 4-2.

4        Tsargrad chose to file suit in Russian court despite the fact that the Google Terms

5    contained a forum selection clause requiring "[a]ll disputes in any way relating to these terms" to

6    be "subject to the exclusive jurisdiction of the federal and state courts located in Santa Clara

7    County, California, USA." Andreatta Decl., Ex. 1 at 17, ECF No. 4-21 (Google Terms). To

8    justify filing suit in Russia, Tsargrad pointed to a Russian law—Article 248.1 of the Arbitrazh

9    Procedural Code. Article 248.1 purports to vest "exclusive jurisdiction [in the] arbitrazh courts of

10   the Russian Federation over disputes with the participation of persons against whom restrictive

11   measures [*i.e.*, sanctions] have been adopted." Compl., Ex. F, ECF No. 1-6 (Art. 248.1). Part 4 of

12   Article 248.1 further provides that any forum selection clause designating a non-Russian forum is

13   "unenforceable due to application in relation to one of the persons participating in the dispute of

14   [foreign sanctions], creating obstacles for such a person in access to justice." Art. 248.1(4).

15       Over Google's objections, the Russian arbitrazh court held that Article 248.1 allowed

16   Tsargrad to maintain suit in Russia. Radin Decl. I, Ex. 2, ECF No. 4-3. Tsargrad eventually

17   prevailed on the merits, and the Russian court entered judgment directing Google to restore

18   Tsargrad's account, backed by a compounding monetary penalty known as an *astreinte*. Radin

19   Decl. I, Ex. 3 at 8, ECF No. 4-4. Ultimately, that judgment held up on appeal, with minor

20   modifications, after the Russian Supreme Court denied review. Radin Decl. I, Ex. 6, ECF No. 4-7.

21       Google did not restore Tsargrad's account access. As a result, Tsargrad's *astreinte*

22   continued to accumulate and now, in combination with other similar *astreintes*, reportedly total at

23   least twenty decillion dollars, a number equal to two followed by thirty-four zeroes. Radin Decl.

24   II ¶¶ 22–23 & n.4, ECF No. 88-1. Recently, Tsargrad has begun taking steps to collect on its

25

26

27   [2] There are two Radin Declarations—one submitted with Google's request for a preliminary
     injunction (ECF No. 4-1), and one submitted with Google's reply in support of that request (ECF
     No. 88-1). Throughout this Order, the Court refers to them as "Radin Decl. I" and "Radin Decl.
28   II," respectively.

1   *astreinte* as part of what it calls a "global legal war" against Google.  *Id.*, Ex. 33, ECF No. 88-34.

2   To that end, Tsargrad has initiated actions to enforce its judgments in courts around the world.

3        Seeking to halt Tsargrad's enforcement efforts, Google filed this suit, alleging breach of

4   the Google Terms' forum selection clause.  At the same time, Google moved for a temporary

5   restraining order (TRO) and preliminary injunction.  PI Mot., ECF No. 4.  With its motion, Google

6   asked the Court to prevent Tsargrad from proceeding with further efforts to enforce its Russian

7   judgment (an anti-enforcement injunction) and to prevent Tsargrad from asking the Russian courts

8   to enjoin this suit (an anti-anti-suit injunction).  The Court granted a TRO, which was later

9   superseded by the parties' stipulation for interim relief.  ECF Nos. 21, 38.  The Court now decides

10  whether and on what terms to issue Google's requested preliminary injunction.

## II.    LEGAL STANDARD

12       Google identifies two tests that might apply to its requested relief.  First is the traditional

13  *Winter* test for preliminary injunctions, which requires Google to show (1) a likelihood of success

14  on the merits, (2) irreparable harm, (3) that the equities favor an injunction, and (4) that the public

15  interest favors an injunction.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  But

16  there is also a second, more forgiving test specifically for anti-suit injunctions—those that bar a

17  party from litigating in another court.  If an anti-suit injunction passes this second test, it need not

18  also satisfy the *Winter* factors.  *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 991

19  (9th Cir. 2006).

20       *Gallo* lays out the contours of this second test.  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d

21  872, 881 (9th Cir. 2012) (reading *Gallo* and related precedent as creating a three-part test for anti-

22  suit injunctions).  First, a party seeking to enjoin proceedings in a foreign court must show that the

23  parties and issues are the same in the matter at hand and the matter to be enjoined.  *Id.*  This is a

24  functional inquiry that turns on whether "all the issues in the foreign action . . . can be resolved in

25  the local action."  *Id.* at 882–83 (quoting *Applied Med. Distrib. Corp. v. Surgical Co. BV*, 587 F.3d

26  909, 915 (9th Cir. 2009)) (alteration in original).  Second, that party must show at least one

27  *Unterweser* factor has been met.  *Id.* at 881.  There are four *Unterweser* factors: whether foreign

28  litigation would "(1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or

oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations." *Gallo*, 446 F.3d at 990 (quoting *Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League*, 652 F.2d 852, 855 (9th Cir. 1981)).  Third, the moving party must show that an anti-suit injunction's impact on comity would be "tolerable." *Microsoft*, 696 F.3d at 881.

Choosing whether to apply the *Winter* or *Gallo* tests is not straightforward in this case. Google does not request an anti-suit injunction, but the injunctions that it does request share similarities with anti-suit injunctions.  At the same time, there are meaningful differences between Google's requested relief and the type of injunction that *Gallo* contemplates.  Still, at least for anti-anti-suit injunctions, the Court can conclude that the *Gallo* test applies.  An anti-anti-suit injunction provides the same kind of remedy—restrictions on a party's ability to seek relief in a foreign court—as an anti-suit injunction does.  But an anti-anti-suit injunction is narrower than an anti-suit injunction because it only blocks parties from seeking a particular type of relief (their own anti-suit injunction) in foreign court.  Meanwhile, an anti-suit injunction prevents parties from pursuing *any* legal proceedings in a foreign court.  As such, it is appropriate to apply the less demanding *Gallo* test when evaluating anti-anti-suit injunctions. *Teck Metals Ltd. v. Certain Underwriters at Lloyd's, London*, No. 05-cv-411, 2009 WL 4716037, at *3 (E.D. Wash. Dec. 8, 2009).

Anti-enforcement injunctions pose a thornier question.  While anti-enforcement injunctions restrict the availability of legal action in foreign courts like anti-suit injunctions, the two arise in very different procedural contexts.  Most significantly, anti-enforcement injunctions can only be granted after a foreign court has entered a final judgment, and final judgments usually mark a turning point in transnational litigation. *See Turner Ent. Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994).  Any concerns about "a race to judgment" become moot. *Seattle Totems*, 652 F.2d at 856.  And the "near-universal policy in favor of *res judicata* comes into play."  Hannah L. Buxbaum & Ralf Michaels, *Anti-Enforcement Injunctions*, 56 N.Y.U. J. Int'l L. & Pol. 101, 103 (2023).

United States District Court
Northern District of California

1    What is more, anti-suit injunctions and anti-enforcement injunctions serve fundamentally

2  different purposes. In transnational litigation, there are often multiple courts that have valid

3  interests in resolving a dispute between two private parties. But it would be chaos for every single

4  one of those courts to weigh in on the same dispute. Thus, there must be some principle by which

5  courts and parties can allocate adjudicatory responsibility. *See Hartford Fire Ins. Co. v.*

6  *California*, 509 U.S. 764, 817 (1993) (describing "the comity of courts, whereby judges decline to

7  exercise jurisdiction over matters more appropriately adjudged elsewhere"); *Gallo*, 446 F.3d at

8  992 (explaining how forum selection clauses are used to promote certainty about the court

9  designated to resolve contract disputes). Anti-suit injunctions serve to enforce those allocations of

10  responsibility by barring parties from going to other courts.

11    Anti-enforcement injunctions do not play the same responsibility-allocating role. *See*

12  *Chevron Corp. v. Naranjo*, 667 F.3d 232, 243 (2d Cir. 2012) (global anti-enforcement injunctions

13  "bear at most a passing resemblance" to anti-suit injunctions). A decision on whether to recognize

14  and enforce a foreign judgment is a matter of public policy. Every individual country has its own

15  rules on recognition and enforcement that reflect the country's own policy choices. Buxbaum &

16  Michaels, *supra*, at 106. Recognition of a judgment in one country does not compel recognition or

17  nonrecognition in another. *Id.*; *cf. Chevron*, 667 F.3d at 240 (New York's judgment recognition

18  act did not permit Chevron to seek a declaration that an Ecuadorian judgment was globally

19  unenforceable). As such, there is no single court, unlike in the case of resolving private disputes,

20  that can or should determine the enforceability of a judgment as to the entire world. Every

21  individual country has a strong interest in seeing that its own recognition policies are carried out

22  while they have little interest in wading into other countries' recognition policies. *See Mujica v.*

23  *AirScan Inc.*, 771 F.3d 580, 603 (9th Cir. 2014) (to identify the proper forum for transnational

24  issues, courts need to weigh domestic interests against foreign interests).

25    These differences between anti-enforcement injunctions and anti-suit injunctions also

26  manifest as a mismatch between anti-enforcement injunctions and the *Gallo* test. The first step of

27  the *Gallo* test requires the party seeking an injunction to show that the issues in the foreign forum

28  can be resolved locally. *Microsoft*, 696 F.3d at 882–83. But in the anti-enforcement context, the

United States District Court
Northern District of California

1    foreign proceedings involve the enforceability of judgments in countries outside the United States.

2    Those issues, which are matters of public law and policy in the countries where Defendants seek

3    enforcement, are distinct from the private contract dispute in this case.  Therefore, the Court

4    applies the *Winter* test to Google's request for an anti-enforcement injunction.

5    ### III.    DISCUSSION

6    #### A.    Judicial Notice

7        Google asks for judicial notice of various court and public records from the United States

8    and abroad.  ECF Nos. 5, 89.  Both domestic and foreign court records and public records are

9    subject to judicial notice.  *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075,

10   1089 n.6 (E.D. Cal. 2019).  Tsargrad objects to three of the exhibits for which Google seeks notice

11   ECF No. 91,[3] but the Court did not rely on any of those three exhibits in deciding this Order.  The

12   Court therefore GRANTS Google's requests for judicial notice.

13   #### B.    Anti-Enforcement Injunction

14   ##### 1.    Likelihood of Success on the Merits

15       Google premises its request for an anti-enforcement injunction on its claim for breach of

16   contract; namely, breach of the Google Terms' forum selection clause.  In opposing Google's

17   request, Tsargrad raises a litany of procedural defenses in addition to substantively disputing

18   whether there was a breach.  The Court starts with the procedural defenses before discussing

19   substantive issues of breach, addressing each of Tsargrad's arguments in turn.

20   ###### a.    Personal Jurisdiction

21       Tsargrad first argues that the Court lacks personal jurisdiction because minimum contacts

22   are absent.  However, minimum contacts analysis does not apply where, as here, parties have

23   expressly consented to personal jurisdiction.  *Mewawalla v. Middleman*, 601 F. Supp. 3d 574, 588

24   (N.D. Cal. 2022) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)).  In

25   agreeing to the Google Terms, Tsargrad unambiguously "consent[ed] to the personal jurisdiction

26

27   [3] Tsargrad states that it objects to Exhibits 1–11, 13, and 28 to the Radin Declaration submitted on reply.  However, Tsargrad only makes arguments against Exhibits 10, 11, and 28.  So, the Court

28   considers any objections to Exhibits 1–9 and 13 to be forfeited.

1    of these courts," *i.e.*, the "federal and state courts located in Santa Clara County, California,

2    USA."  Google Terms at 17.

3          Trying to sidestep its consent, Tsargrad suggests that Google waived the forum selection

4    clause by participating in the Russian proceedings, and that even if there was no waiver, the forum

5    selection clause does not apply.  As the Court discusses in more detail below, neither argument is

6    correct on its own terms.  *Infra* Section III.A.1.c.i.  More fundamentally, those arguments say

7    nothing about personal jurisdiction because they conflate Tsargrad's consent to personal

8    jurisdiction with the Google Terms' forum selection clause.  Personal jurisdiction is about a

9    court's *authority* over a party.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174,

10   1179 (9th Cir. 2004) (citation omitted).  Forum selection is a venue issue that relates to the

11   *location* a dispute should be resolved.  *Id.*  They are different concepts.  *Cox v. CoinMarketCap*

12   *OPCO, LLC*, 112 F.4th 822, 830–31 (9th Cir. 2024) (collecting cases).  Whether or not a contract

13   requires disputes to be resolved in a particular location, and whether such requirement has been

14   waived, says nothing about a court's authority to hear disputes.  *Cf. Uber Techs., Inc. v. U.S. Jud.*

15   *Panel on Multidist. Litig.*, --- F.4th ----, 2025 WL 748135, at *8 (9th Cir. Mar. 10, 2025) ("A

16   forum selection clause cannot eliminate a district court's jurisdiction . . . .").

17         That said, where consent to personal jurisdiction is implied from a forum selection clause,

18   *see SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007), the issue of consent may rise or fall with

19   that clause.  But when contractual consent to personal jurisdiction is express and separate from any

20   forum selection clause, like in the Google Terms, there is no basis for collapsing the two

21   independent provisions into one.  Accordingly, the Court has personal jurisdiction over Tsargrad

22   in this matter involving the Google Terms—the very contract containing Tsargrad's consent.

### b.    Res Judicata

24         Tsargrad next argues that its Russian judgment has preclusive effect and therefore bars

25   Google's breach of contract claim in this matter.  Before engaging in any preclusion analysis,

26   though, the Court must first decide whether to recognize the Russian judgment.  Only recognized

27   judgments can have preclusive effect.  *Alfa Consult SA v. TCI Int'l, Inc.*, No. 21-cv-00812, 2023

28   WL 6466388, at *5 (N.D. Cal. Oct. 3, 2023).

Federal courts sitting in diversity look to state law when deciding whether to recognize foreign country judgments. *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 990 (9th Cir. 2013).[4] California law provides two avenues for recognition. The Recognition Act (Cal. Civ. Proc. Code §§ 1713–25) governs the recognition of most money judgments. *See AO Alfa-Bank v. Yakovlev*, 21 Cal. App. 5th 189, 199 (2018). The recognition of all other foreign country judgments depends on general principles of international comity. *Manco Contracting Co. (W.L.L.) v. Bezdikian*, 45 Cal. 4th 192, 198 (2008); Cal. Civ. Proc. Code § 1723 ("This chapter does not prevent the recognition under principles of comity or otherwise of a foreign-country judgment not within the scope of this chapter.").

Tsargrad's Russian judgment has aspects that may fall under both regimes. It includes an injunctive component requiring Google to restore account access. That component is recognizable only under comity. But the Russian judgment also includes an *astreinte*, which at least in some cases has been treated as a money judgment covered by the Recognition Act. *de Fontbrune v. Wofsy*, 838 F.3d 992, 1006–07 (9th Cir. 2016). The Court need not settle whether comity or the Recognition Act apply here, because both lead to the same result: nonrecognition.

**Comity.** In its most basic form, comity refers to the extent one nation allows the judicial acts of another nation to have force within its borders. *Hilton v. Guyot*, 159 U.S. 113, 163 (1895).[5] But in practice, what comity means and how it functions has proven "complex and elusive."

---

[4] *Ohno* held that the enforceability of foreign judgments is a matter of state law in diversity actions, but enforceability is technically different than recognition. *Ohno*, 723 F.3d at 987 n.2. However, the *Ohno* court explained that the distinction was "not pertinent" for its purposes, *id.*, so the Court reads *Ohno* as standing for the proposition that state law applies for both enforceability and recognition when courts sit in diversity. Other courts to have considered the issue also apply state law when determining the recognition of foreign country judgments. *E.g.*, *BCS Bus. Consulting Servs. Pte. Ltd. v. Baker*, --- F. Supp. 3d. ----, 2024 WL 4848789, at *7 (C.D. Cal. Nov. 4, 2024); *Phillips USA, Inc. v. Allflex USA, Inc.*, 77 F.3d 354, 359 (10th Cir. 1996); *Success Motivation Inst. of Japan Ltd. v. Success Motivation Inst., Inc.*, 966 F.2d 1007, 1009–10 (5th Cir. 1992).

In any case, the parties did not brief any choice of law issues, choosing instead to apply California law without comment. To that extent, they have forfeited any argument that some other law might apply to the recognition of foreign country judgments.

[5] California courts analyzing comity look to both state and federal case law. *See In re Stephanie M.*, 7 Cal. 4th 295, 314 (1994) (citing *Hilton* along with Second and Third Circuit decisions).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984).

2          In one regard, comity is a matter of grace grounded in principles of reciprocity and

3   cooperation.  As the Ninth Circuit explains it, comity is "concerned with maintaining amicable

4   working relationships between nations, a shorthand for good neighbourliness, common courtesy

5   and mutual respect between those who labour in adjoining judicial vineyards." *Mujica*, 771 F.3d

6   at 598 (quoting *JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 423

7   (2d Cir. 2005)) (internal quotations omitted).  Or put differently, it is "a rule of practice,

8   convenience, and expediency[,] rather than of law[,] that courts have embraced to promote

9   cooperation and reciprocity with foreign lands." *Id.* (quoting *Pravin Banker Assocs., Ltd. v.*

10  *Banco Popular Del Peru*, 109 F.3d 850, 854 (2d Cir. 1997)) (cleaned up).  Comity has also been

11  described as the "spirit of cooperation in which a domestic tribunal approaches the resolution of

12  cases touching the laws and interests of other sovereign states." *Société Nationale Industrielle*

13  *Áerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987).

14         Yet, it would be incorrect to characterize comity as no more than judicial gratuity.  Even

15  though comity "is [not] a matter of absolute obligation," it is still more than "mere courtesy and

16  good will." *Hilton*, 159 U.S. at 163–64.  Apart from promoting cooperation, comity also serves

17  the vital purpose of avoiding the "international discord" that can stem from transnational litigation

18  when there are "unintended clashes between our laws and those of other nations." *Mujica*, 771

19  F.3d at 605 (quoting *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).  These concerns

20  are not ones that courts can dismiss out of hand, and as a result, courts withhold comity "only

21  when its acceptance would be contrary or prejudicial to the interest of the nation called upon to

22  give it effect." *Wilson v. Marchington*, 127 F.3d 805, 809 (9th Cir. 1997) (quoting *Somportex Ltd.*

23  *v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971)).

24         In the context of judgment recognition, the Ninth Circuit has distilled these comity

25  principles into two grounds for mandatory nonrecognition and four grounds for discretionary

26  nonrecognition.  The two mandatory grounds are "(1) the [foreign] court did not have both

27  personal and subject matter jurisdiction; [and] (2) the defendant was not afforded due process of

28  law." *Id.* at 810.  The four discretionary grounds are "(1) the judgment was obtained by fraud; (2)

the judgment conflicts with another final judgment that is entitled to recognition; (3) the judgment is inconsistent with the parties' contractual choice of forum; [and] (4) recognition of the judgment, or the cause of action upon which it is based, is against the public policy of the United States or the forum state in which recognition of the judgment is sought." *Id.* The third and fourth discretionary grounds are the ones relevant to this Order.

The third discretionary ground is triggered by violations of a forum selection clause. This leads to the unusual situation here, where the ground for nonrecognition is the same as the underlying claim. The Court must therefore engage in the strange-sounding exercise of determining whether the Russian proceedings violated the Google Terms' forum selection clause in order to determine whether those Russian proceedings can preclude Google's claim for violation of that same forum selection clause. While this may seem awkward on the surface, there is an easy way to understand what is happening. In effect, comity prevents courts from giving preclusive weight to a foreign court's decision relating to a forum selection clause. Instead, comity always requires courts to independently consider forum selection issues. Following that approach, the Court finds, for the reasons below, that Tsargrad violated the Google Terms' forum selection clause by pursuing its lawsuit in Russia. *Infra* Section III.A.1.c.i. Tsargrad's Russian judgment is therefore not entitled to recognition under the third ground.

The fourth discretionary ground based on public policy also justifies nonrecognition, and it perhaps gets at a more basic truth about the Russian judgment at issue here. Tsargrad was able to secure its Russian judgment only because of Article 248.1, which purports to vest "exclusive jurisdiction" in the Russian courts. Art. 248.1(1). That law is expressly aimed at circumventing the otherwise proper jurisdiction of the U.S. courts. What is more, in applying Article 248.1, the Russian courts sought to delegitimize the U.S. court system by holding that the U.S. courts were not a fair forum capable of delivering justice. Radin Decl. I, Ex. 2 at 4 (Russian court holding that Tsargrad did not have "proper access to the justice system" in the United States). In short, the Russian judgment is the culmination of an effort to frustrate the U.S. courts' jurisdiction in clear violation of U.S. public policy. *See Laker Airways*, 731 F.2d at 938 (no comity should be extended to efforts "specifically intended to interfere with and terminate" a U.S. lawsuit). No

1   principle of comity requires this Court to recognize and give force to judgments won on the basis

2   of actions taken to undermine its lawful authority.  That being so, comity does not support

3   recognizing the Russian judgment.

4       *Recognition Act.*  The analysis under the Recognition Act is nearly identical to the comity

5   analysis.  The Act creates a presumption in favor of recognizing judgments within its scope.  *Alfa-*

6   *Bank*, 21 Cal. App. 5th at 199; Cal. Civ. Proc. Code § 1716(a) ("Except as otherwise provided . . .

7   a court of this state *shall* recognize a foreign-country judgment to which this chapter applies.")

8   (emphasis added).  The burden is on the party resisting recognition to show that one of the Act's

9   specifically enumerated grounds for nonrecognition applies.  *Alfa-Bank*, 21 Cal. App. 5th at 199.

10  The two relevant grounds are violation of a forum selection clause and incompatibility with U.S.

11  public policy, which are the same two grounds discussed in the comity analysis above.  Cal. Civ.

12  Proc. Code §§ 1716(c)(1)(C)–(D).  The only difference under the Act is that once the party

13  resisting recognition proves one of these grounds is met, the party seeking recognition still has a

14  chance to "demonstrate[] good reason to recognize the judgment that outweighs the ground for

15  nonrecognition."  Cal. Civ. Proc. Code § 1716(c)(2).  If the party seeking recognition fails to do

16  so, then the judgments are not recognized.

17      The Court's comity analysis applies equally to the Recognition Act and shows that Google

18  has proven the relevant grounds for nonrecognition are met.  Tsargrad offer no reasons to

19  recognize the Russian judgment in spite of that fact.  Accordingly, the Russian judgment is not

20  subject to recognition under the Act either, and it has no preclusive effect in this Court.

21                      **c.    Breach of Contract**

22      Having resolved Tsargrad's procedural arguments, the Court turns to its defense on the

23  merits.  There are two layers to the analysis here.  First, there is the question of whether, in filing

24  suit in Russian court, Tsargrad violated the Google Terms' forum selection clause.  If the answer

25  to that question is "yes," that prompts the follow-up question—What significance does violation

26  of the forum selection clause have now that the underlying Russian proceedings are over?

27      In resolving those two questions, the Court first finds that Google is likely to show

28  Tsargrad violated the forum selection clause by suing in Russia.  And second, because the Google

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Terms contain an implied clause that bars parties from seeking to enforce judgments acquired in

2  violation of the forum selection clause, Google is likely to show that Tsargrad's enforcement

3  efforts are an ongoing breach.

### i.    Past Russian Proceedings

5  The forum selection clause here is straightforward: "All disputes in any way relating to

6  these terms . . . . are subject to the exclusive jurisdiction of the federal and state courts located in

7  Santa Clara County, California, USA." Google Terms at 17. The only exception to the clause is

8  when "applicable local law prevents certain disputes from being resolved in a California court."

9  *Id.* at 18. A party "may submit those disputes to local courts." *Id.* There is no question that

10  Defendants did not file their lawsuits in Santa Clara County, so the only issue with respect to

11  breach is whether the exception applies.

12  At the outset, the Court observes that the Google Terms contain a choice-of-law clause.

13  That clause selects California law, *id.* at 17, and no party disputes that California law applies.[6]

14  Under California law, courts interpret contracts "to give effect to the mutual intention of the

15  parties at the time the contract is formed." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d

16  1025, 1031 (9th Cir. 2008) (internal quotations and citations omitted). When the contract

17  language is "[c]lear, explicit, and unambiguous," that language governs. *Id.*

18  The exception is written in that kind of clear and unambiguous language. It applies when

19  "local law" (here, Russian law) applies to "prevent" disputes between Google and Tsargrad from

20  being resolved in California court. The plain meaning of "prevent" is to stop something from

21  happening or otherwise hinder something from happening. So, the exception is triggered if there

22  is a Russian law that stops Tsargrad from filing suit in California or that otherwise hinders

23  Tsargrad from doing so. Tsargrad contends that Article 248.1 is such a law.

---

[6] Tsargrad cites to its motion to dismiss in support of its proposed contract interpretation. PI Opp'n at 12, ECF No. 85 (citing Mot. to Dismiss at 16–26, ECF No. 81). Then, in its motion to dismiss, Tsargrad explains that "California and Russian law are the same, so the Court need not engage in a conflict-of-law analysis and may apply California law." Mot. to Dismiss at 16 n.5. So, while Tsargrad's arguments take a circuitous route, its admission that California law applies is unambiguous.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Assuming that the Russian courts were correct to hold that Article 248.1 applies to Tsargrad, Article 248.1 still did not prevent Tsargrad from filing suit in California. There are two clauses in the Article that might prevent resolution in California. The first is Part 1, which purports to vest "exclusive jurisdiction" in the Russian arbitrazh courts. Art. 248.1(1). But the word "exclusive" does not do as much work as Tsargrad suggests. Obviously, the Russian courts' jurisdiction over Tsargrad's claims is not "exclusive" in the sense that no other court in the world has the power to resolve those claims. For good reason, Tsargrad does not argue that Russian law can reach across international borders to strip all other courts of their jurisdiction. In the United States, a federal court's jurisdiction depends on the Constitution and federal statute, not Russian law. Article 248.1's exclusive-jurisdiction clause therefore does not "prevent" Tsargrad from resolving its dispute in California by stripping California courts of their authority and jurisdiction.

Nor does the exclusive-jurisdiction clause impose any affirmative legal obligation on Tsargrad to file suit in Russian court. For one, the Russian courts' "exclusive" jurisdiction is not backed by any fine, penalty, or other sanction could compel Tsargrad to file in Russia. More importantly, other sections of Article 248.1 undercut the notion that parties covered by the Article have no choice but to file suit in Russia. Specifically, Part 5 provides that Article 248.1 "shall not impede the recognition and enforcement of a decision of a foreign court . . . adopted pursuant to the claim of a [covered party] . . . , or if that [covered party] has not objected to the consideration of the dispute . . . by a foreign court." Art. 248.1(5). In other words, Article 248.1 protects the recognition of non-Russian judgments won by a covered party or rendered against a covered party who did not object to the foreign court's jurisdiction. The only way this provision makes sense is if Article 248.1 allows covered parties the option of pursuing their disputes in non-Russian courts, notwithstanding the Russian courts' "exclusive jurisdiction."

The only other clause that might "prevent" Tsargrad from filing suit in California is Part 4, which renders unenforceable any forum selection clause choosing a non-Russian forum. Art. 248.1(4). All that means, however, is that the Russian courts could not compel Tsargrad to file in California under the Google Terms. Part 4 does not rewrite the Google Terms to obligate Tsargrad to file in Russia.

United States District Court
Northern District of California

1    Given all this, the Court concludes that Article 248.1 did not "prevent" Tsargrad's disputes

2    with Google from being resolved in a California court.  Rather, the Article provided Tsargrad with

3    the option of proceeding in Russian court by instructing Russian courts not to enforce contrary

4    forum selection clauses.  Tsargrad took advantage of that option, but it did so at the risk that

5    another court, where forum selection clauses are enforceable, would find that Tsargrad violated

6    the Google Terms' forum selection clause.  That is the case here.  Accordingly the local-law

7    exception did not apply, and Tsargrad likely violated the Google Terms' forum selection clause by

8    filing suit in Russia.

9    Tsargrad counters that Russian courts have specifically used the word "prevents" when

10    discussing how Article 248.1 impacts forum selection issues.  Nikitin Decl. ¶¶ 55, 60, 62–63, ECF

11    No. 81-3 (citing Russian cases).  In light of the analysis above, though, that appears to be little

12    more than imprecise use of language.  The notion that Article 248.1 is a bar against the resolution

13    of disputes outside of Russia runs headfirst into Part 5.

14    Tsargrad also tries to invoke the rule that "ambiguities in written agreements are to be

15    construed against their drafters."  PI Opp'n at 14 (quoting *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th

16    233, 247 (2016)).  Tsargrad appears to be citing this well-known canon of contract interpretation

17    to create a presumption against breach.  However, as a canon of contract *interpretation*, the

18    presumption against drafters unsurprisingly applies only to interpretation of contract language, not

19    factual determinations about breach.  And as the Court explained above, there are no ambiguities

20    in the Google Terms' relevant language, so the canon does not apply to the Terms' interpretation,

21    either.

22    In a final attempt to win on the merits, Tsargrad argues that there was no breach because

23    Google waived the forum selection clause by participating in the Russian proceedings through

24    judgment and final appeal.  While parties can waive a forum selection clause, courts require a very

25    strong showing to find waiver.  *See Newco Distribs., Inc. v. Earth Animal Ventures*, No. 8:24-cv-

26    01850, 2024 WL 4828714, at *7 (C.D. Cal. Nov. 18, 2024); *Marcotte v. Micros Sys.*, No. 14-cv-

27

28

01372, 2014 WL 5280875, at *4 (N.D. Cal. Oct. 14, 2014).[7]  Courts find waiver only where a party has "taken actions inconsistent with [a forum selection clause], or delayed its enforcement, and enforcement would prejudice other parties."  *S & J Rentals, Inc. v. Hilti, Inc.*, 294 F. Supp. 3d 978, 984 (E.D. Cal. 2018).  None of Google's actions in the Russian proceedings rise to that level.

To be sure, Google did not take advantage of one method of enforcing its forum selection clause—seeking an anti-suit injunction to halt the Russian proceedings while they were ongoing.  But an anti-suit injunction is not the *only* way to protect forum selection rights.  Google also could have tried, and did try, to enforce its forum selection clause directly in the Russian proceedings.  Radin Decl. II, Ex. 1 at 1–2, 7–9, ECF No. 88-2.  Those actions are consistent with the forum selection clause even though Google did not ultimately prevail on its arguments in Russian court.

For these reasons, the Court finds that Google is likely to prove that Tsargrad breached the forum selection clause by filing suit in Russia.

### ii.     Current Enforcement Efforts

Were Google not seeking injunctive relief, the Court could probably end its analysis there.  Injunctive relief requires one more step, though, because injunctions are only available to redress ongoing or anticipated future harms, not past wrongs.  *City of L.A. v. Lyons*, 461 U.S. 95, 102, 105 (1983).  Since the Russian proceedings are now over, a violation of the forum selection clause based on those proceedings is a wholly past wrong.  To show a likelihood of success for injunctive purposes, Google must show that there is some ongoing or anticipated breach of contract.

Efforts to enforce the Russian judgments do not violate the Google Terms' forum selection clause directly.  Nowhere in the forum selection clause is enforcement mentioned.  And enforcement is different than a private dispute between Google and Tsargrad, which the forum selection clause does cover.  Enforcement actions cannot be viewed as purely private disputes since they contain a significant public-law component: they reflect the enforcing forum's policy on how to structure judicial relations with foreign courts.  *Supra* Section II.

---

[7] Neither side is clear about which law of waiver applies, but based on their citations, it appears that they are relying on some mix of federal common law and California law.  In the absence of any choice-of-law argument, the Court does the same.

United States District Court
Northern District of California

That said, the forum selection clause is not the only contractual provision at issue.  Under California law, "[e]vidence derived from experience and practice can [] trigger the incorporation of additional, implied terms."  *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178–79 (2011) (citation omitted) (first alteration in original).  That is so even where there is a written contract.  *Id.*  Courts will therefore imply contractual terms when (1) the implied term "arise[s] from the language used or [is] indispensable to effectuate the intention of the parties"; (2) the implied term is "so clearly within the contemplation of the parties that they deemed it unnecessary to express it"; (3) the implied term is a "legal necessity"; (4) it can be assumed that the parties would have agreed to the implied term "if attention had been called to it"; and (5) the implied term is not covered by the contract.  *Frankel v. Bd. of Dental Examiners*, 46 Cal. App. 4th 534, 545–46 (1996); *see also Grebow v. Mercury Ins. Co.*, 241 Cal. App. 4th 564, 578–79 (2015) (applying same test).

All five of those factors support implying a term that bars parties from enforcing judgments obtained in violation of the forum selection clause.  First, such a term is indispensable to close the loophole that arises in cases like this, where parties can win judgments in a court that refuses to enforce forum selection clauses.  By doing so, a party could bypass forum selection clauses completely, and its counterparty to the contract would have no recourse.  Second, the term is an obvious extension of the forum selection clause.  If a party cannot file suit outside of California, it stands that the party should not be able to obtain or enforce judgments won outside of California.  Third, the term is a legal necessity to close the loophole just described.  Fourth, if the parties were willing to limit their disputes to a single forum, they would almost certainly agree not to enforce judgments from outside that forum—after all, if they adhere to the forum selection clause, there would be no such outside judgments.  Finally, the Google Terms do not cover this issue because it addresses only private disputes, not enforcement actions.

The Court therefore finds that the Google Terms contain an implied provision barring parties from enforcing judgments obtained in violation of the Terms' forum selection clause.  By initiating actions to enforce the Russian judgments procured in violation of the forum selection clause, Tsargrad is likely breaching that implied provision.

### 2. Irreparable Harm

Google claims that it would suffer irreparable harm without an injunction because it would be exposed to a judgment that requires it to violate U.S. sanctions law, and because allowing continued enforcement efforts would rob it of the benefit of its forum selection clause. For purposes of this Order, it suffices to address just the latter.

Courts around the country regularly hold that the "depriv[ation] of [a] bargained-for choice of forum" constitutes irreparable harm sufficient to support an injunction. *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022); *see also Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V.*, No. 23-cv-11168, 2024 WL 1743109, at *7 (S.D.N.Y. Apr. 23, 2024); *DGCI Corp. v. Triple Arrow Co. for Gen. Trading Co.*, No. 21-cv-1174, 2022 WL 18671069, at *9 (E.D. Va. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL 18671062 (E.D. Va. Sept. 13, 2022); *Enerplus Res. (USA) Corp. v. Wilkinson*, No. 1:16-cv-103, 2016 WL 8737869, at *4 (D.N.D. Aug. 30, 2016), *aff'd*, 865 F.3d 1094 (8th Cir. 2017); *InterDigital Tech. Corp. v. Pegatron Corp.*, No. 15-cv-02584, 2015 WL 3958257, at *9 (N.D. Cal. June 29, 2015); *Gen. Protecht Grp., Inc. v. Leviton Mfg. Co.*, No. 10-cv-1020, 2010 WL 5559750, at *25 (D.N.M. Nov. 30, 2010), *aff'd*, 651 F.3d 1355 (Fed. Cir. 2011). Such harm is irreparable because it forces a party to expend time and effort litigating in a forum that it has agreed to avoid, and the party will never be able to get that time back. Indeed, the Ninth Circuit has observed that an injunction "may be the *only* viable way" to protect against such harm. *Applied Med.*, 587 F.3d at 919 (emphasis added).

Of course, it is not the direct violation of the forum selection clause that is at issue here, but rather, the violation of the implied prohibition against enforcing wrongfully procured judgments. *Supra* Section III.A.1.c.ii. That distinction makes no difference, though. By the terms of the forum selection clause, a wrongfully procured judgment never should have existed, so any time spent defending against it represents time and effort that a party can never recover. As such, the Court finds that Google has shown irreparable harm.

### 3. Balance of the Equities

Tsargrad raises two equitable defenses to Google's requested injunctions. It begins by

arguing that Google came to the Court with unclean hands.  Under the unclean hands doctrine, plaintiffs seeking equitable relief are required to "act[] fairly and without fraud or deceit as to the controversy in issue."  *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 959 (9th Cir. 2015) (citation omitted).  Tsargrad claims that Google violated this precept when it moved for a TRO without complying with the heightened duty of candor that applies to ex parte proceedings.  Specifically, Tsargrad claims that Google violated California Rule of Professional Conduct 3.3(d), which requires attorneys in ex parte proceedings to disclose "all material facts known . . . whether or not the facts are adverse to the position of the client."  Tsargrad says that Google failed to live up to this standard by concealing an allegedly fraudulent transfer of funds from Google's Russian affiliate to another Google entity, keeping silent about defenses to personal jurisdiction, and mischaracterizing U.S. sanctions law.

By and large, the "facts" that Google supposedly concealed are legal arguments and defenses that are heavily disputed.  While attorneys do have an obligation to disclose all material facts in ex parte proceedings, there is no comparable obligation to make arguments or raise defenses against their client's interest.  Google disclosed all the most significant facts, including the existence of Article 248.1 and the court decisions stemming from Tsargrad's Russian lawsuit.  The only undisclosed fact that Tsargrad identifies—as opposed to argument or defense—is the allegedly fraudulent transfer from Google's Russian affiliate to another Google entity.  On that point, Google firmly disagrees with Tsargrad's characterization.  Radin Decl. II ¶¶ 20–21.  In any case, Tsargrad has neither supplied competent evidence about the transfer that would allow the Court to conclude it was fraudulent, nor has it argued that the Russian courts' findings on that issue are res judicata or otherwise binding.  Therefore, Google's hands are clean.

Tsargrad's more substantial argument is that Google unduly delayed when bringing this suit, a type of equitable argument that sounds in laches.[8]  *See Danjaq LLC v. Sony Corp.*, 263 F.3d

_____

[8] Like some other courts have done, Tsargrad raised delay under the rubric of irreparable harm.  *E.g.*, *Oakland Trib., Inc. v. Chron. Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).  The Court instead chooses to discuss delay as an equitable defense to emphasize the flexibility of the inquiry and the need to balance the equities as a whole.

942, 950–51 (9th Cir. 2001).  Tsargrad advocates for measuring Google's delay from the moment it first filed suit in Russian court, faulting Google for not seeking an anti-suit injunction to halt the earlier Russian proceedings and instead bringing this case only after judgment had been rendered. But Google had good reason for not seeking an anti-suit injunction.  As Google's expert explained and Tsargrad did not attempt to rebut, a Russian court almost certainly would not have enforced an anti-suit injunction halting Tsargrad's Russian lawsuit.  Holiner Decl. ¶¶ 29–37, ECF No. 88-42. In all likelihood, if Google had made an attempt at securing an anti-suit injunction in U.S. court during the pendency of Tsargrad's Russian lawsuit, that would have led to parallel litigation in two courts over Google's forum selection clause.  That state of affairs would be little different than the one now, where two courts are or have been asked to rule on the forum selection clause: the Court in this matter, and the Russian court in Tsargrad's prior lawsuit.

More to the point, it is not breach of the forum selection clause that justifies an injunction in this case.  It is breach of the implied contractual term barring enforcement of judgments procured in violation of the forum selection clause.  Indeed, Google could not seek injunctive relief until it became likely that Tsargrad would seek enforcement of its Russian judgment because Google would lack standing.  *See Lyons*, 461 U.S. at 105.  Given the eye-popping decillion-dollar figure associated with the various Russian judgments against Google, including Tsargrad's *astreinte*, it was reasonable for Google to assume that Tsargrad's *astreinte* was largely symbolic, with little possibility of enforcement.  That is the case despite Tsargrad's media statements promising retribution against Google.  *See* Radin Decl. II, Ex. 33; Ex. 34, ECF No. 88-35. Thus, it was reasonable for Google to wait until Tsargrad initiated enforcement proceedings before filing this lawsuit, and any delay must be measured against the time when Tsargrad began its enforcement efforts.

Tsargrad opened its first enforcement action in November 2023.  Iliasova Decl., Ex. C, ECF No. 85-15.  This lawsuit came nine months later, on August 19, 2024.  *See* Compl.  Although nine months is a significant amount of time, there is a good explanation for why Google waited that long.  Tsargrad filed its enforcement action in Turkish court on November 3, 2023, but it did not effectuate service on Google until August 2, 2024.  Radin Decl. I ¶ 3.  Google filed this

United States District Court
Northern District of California

1   lawsuit just under three weeks after service. That is not a meaningful delay that cuts against

2   issuing equitable relief.

3       With Tsargrad's equitable defenses failing to hold up, the Court finds that the equities

4   favor an injunction. It is obvious that Google's dispute with Tsargrad has long since transcended a

5   simple disagreement over account access. Tsargrad makes no secret of its view that Google is an

6   "American monster" and that it is carrying out a "global legal war" against Google. Radin Decl.

7   II, Ex. 33 at 1. And Tsargrad has telegraphed its intent to drive Google into bankruptcy, saying:

8   "[W]e will pursue [Google] around the world. Carthage must be destroyed." *Id.*, Ex. 34. With

9   this context, there is no other way to interpret Tsargrad's enforcement efforts against Google than

10  as a punitive campaign driven by animus and enmity. In other words, the enforcement efforts are

11  vexatious and oppressive. The equities support enjoining such conduct.

### 4.    Public Interest

13      This leaves the final *Winter* factor, public interest. While all three earlier factors supported

14  issuance of an anti-enforcement injunction, the public interest weighs against. Specifically,

15  comity—the amorphous, but important, spirit of cooperation between the courts of different

16  nations, *see supra* Section III.A.1.b—weighs against issuing a global anti-enforcement injunction.

17      Even though the Court earlier found that comity did not require recognition of Tsargrad's

18  Russian judgment, the decision on whether to issue an anti-enforcement injunction presents

19  different concerns. The recognition decision was cabined to the United States, so any comity

20  concerns existed only between the United States and Russia. Google's requested anti-enforcement

21  injunction, however, would reach across the entire globe. The comity concerns arising from that

22  injunction are therefore between the United States and every other country there is.

23      Google encourages the Court to set aside any misgivings about the injunction's global

24  reach, pointing the Court to the Ninth Circuit's discussion in *Gallo* that "enforcing a contract and

25  giving effect to substantive rights . . . . in no way breaches norms of comity." 446 F.3d at 994.

26  Google also observes that the requested injunction would act on Tsargrad *in personam*, not on any

27  court of a foreign country. While those are mitigating factors, they do not eliminate all concerns

28  about comity.

United States District Court
Northern District of California

United States District Court
Northern District of California

To begin, *Gallo* did not deal with an anti-enforcement injunction. Instead, *Gallo* emphasized that it was dealing with a private dispute between private parties and enforcing a private contract. *Id.* Enforcement proceedings, though, have an inescapable public component, so the comity implications that come from enjoining enforcement are greater than those that come from enjoining suit pursuant to a forum selection clause. Further, while it is true that Google does not request the Court to enjoin other countries' tribunals directly, an injunction against Tsargrad would undoubtedly interfere indirectly with those countries' ability to see their policies on judgment recognition through. Most important of all, Google asks for a worldwide injunction unlike in *Gallo*, where the plaintiff sought to enjoin litigation in only one other country. "[W]hen a court in one country attempts to preclude the courts of every other nation from ever considering the effect of [a] foreign judgment, the comity concerns become far graver" than when dealing with an injunction against litigation in a single foreign nation. *Chevron*, 667 F.3d at 244. As a result, comity weighs strongly against an anti-enforcement injunction.

However, comity is not the end-all-be-all when it comes to injunctions. Even where an injunction would upset some comity interests, courts can issue that injunction if the "impact on comity is tolerable." *Gallo*, 446 F.3d at 991. Here, as strongly as comity weighs against an anti-enforcement injunction, the other three *Winter* factors weigh heavier still. Considering how Tsargrad's Russian judgment came as a result of concerted efforts to evade the jurisdiction of U.S. courts; how the amount that Google owes in Russian judgments is grossly excessive under any reasonable view of due process, *see BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568 (1996); and how Tsargrad is admittedly pursuing a campaign of vexatious litigation against Google; it is appropriate to issue a global anti-enforcement injunction despite the weighty comity issues that accompany such an action.

The Court notes one exception to the global nature of its anti-enforcement injunction: The Court does not enjoin Tsargrad from seeking enforcement of its judgment in Russian court. Whatever the strength of Tsargrad's Russian judgment, from a comity perspective, it is simply a bridge too far to enjoin a Russian citizen from enforcing a Russian judgment in Russian court.

*    *    *

The Court GRANTS an anti-enforcement injunction preventing Tsargrad from seeking to enforce its Russian judgment anywhere around the world except for Russia.

### 5.    Scope of Relief

The Court identifies the exact terms of its injunction in the Conclusion below, but it briefly addresses here Tsargrad's arguments for limiting the scope of relief.

First, Tsargrad argues that the Court should not grant a mandatory injunction that orders it to dismiss any pending enforcement proceedings. Given the preliminary posture of this case, the Court does not do so now and is not inclined to do so unless and until it enters a permanent injunction. The preliminary injunction will therefore only direct Tsargrad to maintain the existing pauses on any enforcement proceedings and to not file new enforcement actions.

Second, Tsargrad urges the Court to allow it to file enforcement actions against Google's affiliates. Although no Google affiliates are party to this lawsuit or the Google Terms, the Court grants a preliminary injunction on the basis that the Google Terms prevent Tsargrad from enforcing its Russian judgment at all. There is no carveout allowing enforcement against affiliates. And including such a carveout in the preliminary injunction would go against the equities of the situation. A carveout like that creates an obvious workaround to the Court's injunction, allowing Tsargrad to continue pursuing its retributive operation against Google by targeting Google's affiliates. As such, the Court's injunction extends to enforcement actions against both Google and its affiliates.

Third, Tsargrad asks the Court not to limit enforcement in Russia. As the Court stated above, it is not doing so for comity reasons.

Finally, Tsargrad asks that the Court order any proceeds from enforcement to be paid into the relevant foreign court during the pendency of this case rather than barring it from pursuing enforcement actions altogether. But the harm here stems from Google being forced to *litigate* against Tsargrad's enforcement efforts. Tsargrad's suggestion to effectively hold in escrow any proceeds from such litigation does not address Google's irreparable harm from being forced to defend against enforcement actions.

United States District Court
Northern District of California

**C.    Anti-Anti-Suit Injunction**

The Court also finds that, under the *Gallo* test, it is appropriate to enjoin Tsargrad from seeking an anti-suit injunction against this lawsuit.  First, an effort to halt these proceedings through an anti-suit injunction would deal with the same issues as this proceeding.  Second, seeking an anti-suit injunction would frustrate United States' strong policy in favor of forum selection clauses, *Gallo*, 446 F.3d at 992, and it would be vexatious, *supra* Section III.A.3.  This satisfies two of the *Unterweser* factors.  Finally, the impact on comity would be tolerable for the reasons discussed when analyzing the public interest above.  *Supra* Section III.A.4.  The Court therefore GRANTS an anti-anti-suit injunction against Tsargrad.

**D.    Bond**

Finally, Tsargrad asks for the Court to require Google to post a bond under Federal Rule of Civil Procedure 65(c).  The Court has the discretion to "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted).  Under that standard, the Court finds that no bond is necessary.

## IV.    CONCLUSION

The Court GRANTS Google's preliminary injunction motion as to Tsargrad.  The terms of the Court's preliminary injunction are set forth below:

1.    The Stipulation and Order for interim relief at ECF No. 38 is replaced with the terms set forth below.

2.    Tsargrad[9] shall not commence or pursue suit in the Russian Arbitrazh Court or any other Russian court to enjoin Google from continuing and/or pursuing this proceeding, Case No. 5:24-cv-05423 in the Northern District of California.

3.    Tsargrad shall not attach, impair, or execute upon any assets of Google or its affiliates in connection with any proceeding to enforce Tsargrad's Russian

---

[9] When the terms of the preliminary injunction refer to Tsargrad, they include its officers, agents, servants, employees, attorneys, and all those in active concert or participation with them to the extent that those parties are acting on Tsargrad's direction.

1    judgment outside of Russia ("Enforcement Proceedings").

2    4.    Within three weeks of this Order, Tsargrad shall move to adjourn or stay all

3          pending Enforcement Proceedings to the extent they are not already adjourned or

4          stayed.  If a court previously denied a request to adjourn or stay an Enforcement

5          Proceeding, Tsargrad need not make a second request to adjourn or stay.  Tsargrad

6          shall not otherwise participate in any way in any Enforcement Proceeding, except

7          that Tsargrad may respond to a direct order from a court in an unadjourned or

8          unstayed Enforcement Proceeding.

9    5.    Tsargrad shall not initiate any new Enforcement Proceedings.

10   6.    Tsargrad shall not re-file any previously initiated Enforcement Proceedings that

11         have been dismissed unless they are ordered to re-file within a finite time period

12         that expires or otherwise would be precluded from re-filing by a limitations period.

13         If such Enforcement Proceedings are re-filed, Tsargrad shall move to adjourn or

14         stay such proceeding in accordance with the fourth preliminary injunction term

15         above.

16   **IT IS SO ORDERED.**

17   Dated:  March 31, 2025

18

19

20   EDWARD J. DAVILA
     United States District Judge

21

22

23

24

25

26

27

28